## Case No. 10,014.
### The NAPOLEON.
[Brown, Adm. 32.] [1]
District Court, D. Michigan. March, 1857.

COLLISION—VESSEL AGROUND IN NARROW CHANNEL—RIGHT OF WAY.

1. Where a tug is working at a vessel aground in the channel of St. Clair flats, it is her duty to obstruct navigation as little as possible, and to give way to passing vessels, though it may require a temporary suspension of her efforts.
[Cited in The Cherokee, 15 Fed. 123.]

2. In approaching a tug so engaged, the master of a steamer has a right to rely upon her observance of this duty, and the same precautions are not demanded of him as would be if no such obligation rested upon the tug.

On libel of Chester Kimball, for damages sustained by the steamtug J. D. Morton in

[1] [Reported by Hon. Henry B. Brown, District Judge, and here reprinted by permission.]

a collision upon the St. Clair flats. At the time of the collision, which was on the 30th of August, A. D. 1856, the Morton was engaged in getting off the Torrent, which was aground upon the St. Clair flats, on the southerly side of the channel, and about a quarter of a mile from the lower end. The tug had taken a line about 40 feet in length from the schooner, and was endeavoring by slackening and then going ahead at full speed, by a sudden jerk to start her off. The schooner Muskingum was also lying aground on the opposite or northerly side of the channel, and to the southwest of the Morton. In pulling on the Torrent, the Morton was headed up and partly across the channel, although it was charged in the libel that there was a clear passage of 10 rods wide between her and the northerly bank. While lying in this position, the propeller Napoleon came up the channel, passed to the northerly of the Muskingum, and ran into the Morton, striking her upon the port wheel nearly amidships, and doing her considerable damage.

Geo. S. Swift, for libellant, cited Davies v. Mann, 10 Mees. & W. 546; The Batavier, 2 W. Rob. Adm. 407; New-Haven Steamboat & Transp. Co. v. Vanderbilt, 16 Conn. 420; Cummins v. Presley, 4 Har. (Del.) 315; Brownell v. Flagler, 5 Hill, 282; The Girolamo, 3 Hagg. Adm. 169; Ralston v. The State Rights [Case No. 11,540].

Levi Bishop, for claimant, cited Fland. Mar. Law, 289, 299, 304; 1 Conk. Adm. 370; The Genesee Chief, 12 How. [53 U. S.] 461.

WILKINS, District Judge. The channel of St. Clair flats, where the collision in this case occurred, navigable for vessels drawing ten feet of water, does not exceed 180 feet in width. There is some conflict in the testimony as to the exact position of the Morton, but I am satisfied she was not lying parallel or nearly parallel with the channel, as she could not in this position have worked to any advantage in getting the Torrent off. Bearing in mind that the length of the Morton was 165 feet, and the distance between her stern and the bow of the Torrent 30 feet, she would naturally assume a position, in getting off the Torrent, that would throw her so far across the channel that it would be impossible for a tug, drawing so much water as the Napoleon, to pass her to the northward. I am satisfied that such was the fact. Of course, too, it would be out of the question for the Napoleon to pass between the two vessels so long as the line was taut. Evidence was given of a custom for tugs, while working at vessels aground upon the flats, to give way upon the approach of other vessels and permit them to pass. Considering the number of vessels using the narrow channel, and the frequency with which they ground there, I think that good seamanship and the interests of commerce require that tugs, in assisting stranded vessels, should obstruct the navigation of the channel as little as possible, and should yield a right of way to passing vessels, even if they are obliged to desist temporarily from their efforts. Had this course been pursued by the Morton in the present case, the collision would have been avoided. While it is true her failure to do this would not have justified the Napoleon in running her recklessly down, or in omitting the observance of ordinary care in approaching her, still her duty to give way, and the probability of her so doing, ought to be taken in consideration in determining what would be ordinary care under the circumstances—in other words the master of the Napoleon had a right to suppose he would conform to this well known custom, and to rely upon his observance of it, and would be excused from such precautions as would have been necessary had he known the Morton would not have given way. As she approached the group of vessels in question, the Napoleon passed to the northward of the Muskingum, which lay nearly abreast of the Torrent, and a little to the northward of the center of the channel, and as she passed her, her master hailed the Morton to stop his boat, back her, and let him go by. To this Capt. Kimball replied, "No, go round me"; and when Capt. Pridgeon, of the Napoleon, again said, "I am drawing too much water, and can't go round you," he still refused to move, and continued working his engine ahead. Seeing then that a collision was imminent, Capt. Pridgeon rang his bell successively to check, stop, back and back strong. This was immediately done, and the wheel of the Napoleon was working backward at the moment of collision. If the Morton had backed at once when requested, and opened a passageway, as she ought to have done, the Napoleon would have passed her without injury. There was not sufficient water for her to pass either to the southward of the Torrent or the northward of the Morton, and they were thus obstructing the only available channel there was at that point.

Bearing in mind that as against the Morton the Napoleon had the right of way, I cannot see that there was any omission of ordinary precautions on her part to avoid a collision, and she must therefore be exonerated from fault. Libel dismissed.

See The Thomas A. Scott [Case No. 13,921].